IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHANG LIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00029 |
| | ) | |
| GAEL TISACK, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Chang Lim, proceeding *pro se*, brought this action against a group of persons and entities related to Lim's former employer (collectively defendants), alleging retaliation under Title VII of the Civil Rights Act of 1964 (Title VII) and various state law claims. Those claims are based on defendants' collection on a foreign judgment against Lim in Virginia and statements that defendants made in unemployment proceedings in Virginia and Wisconsin. (*See generally* Am. Compl. (Compl.), Dkt. No. 24.) Before the court are defendants' motions to dismiss for lack of jurisdiction and failure to state a claim (Dkt. No. 25), their motion to dismiss for lack of prosecution (Dkt. No. 32), and their motion for sanctions pursuant to Fed. R. Civ. P. 11 (Dkt. No. 3). Lim has also filed a motion for the court to reconsider its dismissal of certain defendants and a motion for a default judgment against those defendants. (Dkt. Nos. 40, 41.) For the reasons stated herein, the court will grant defendants' motion to dismiss for failure to state a claim, deny their remaining motions, and deny Lim's motions.

I. BACKGROUND

The facts recited here come from two sources: the allegations of Lim's complaint and the public records of Lim's previous litigation, made part of the record as exhibits to defendants'

1

motion for sanctions. The court takes judicial notice of those public records and will construe those documents and Lim's allegations in the light most favorable to him. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010).

**A. The Michigan Litigation**

The dispute in this case began with a lawsuit that Lim filed against his former employer, Terumo Heart, Inc. (THI), and related parties in the United States District Court for the Eastern District of Michigan in 2011. THI, a manufacturer of medical devices that was in the process of securing FDA approval on a device, hired Lim as a regulatory affairs manager in March 2010. (Compl. ¶¶ (9)–(10), 3–5.)[1] While employed at THI, Lim complained about the company's regulatory compliance and expressed concerns that some of THI's medical devices endangered patients. (*Id.* ¶¶ 8–10.) Gael Tisack, THI's compliance officer, told Lim that his concerns were "false," and Lim was subsequently terminated on October 1, 2010. (*Id.* ¶¶ 10–11.)

After his termination Lim sued a variety of persons and entities related to THI (*id.* ¶ 15), claiming that THI had discriminated and retaliated against him based on his race, color, national origin,[2] and opposition to THI's regulatory non-compliance. His suit alleged Title VII discrimination and retaliation, violation of the Michigan Whistleblowers' Protection Act, and various state law claims. (*Id.* ¶ 15; *Lim v. Terumo Corp.*, Nos. 14-1513/1573, at 1, 5–9 (6th Cir. Apr. 2, 2015) (reproduced at Dkt. No. 3-1, at 43).) THI counterclaimed, asserting a claim of

---

[1] Lim's complaint has two sets of numbered paragraphs. The allegations of his "Jurisdiction and Venue" and "Parties" subheadings are cited in parentheses; non-parenthetical citations refer to sections entitled "Facts" and "Cause of Action."

[2] Although Lim's complaint does not allege his race or ethnicity, it appears from other court records that Lim is from South Korea and identifies his race as Asian.

2

unjust enrichment based on allegations that Lim had misrepresented his qualifications and work history.  (Compl. ¶ 16; *Lim*, Nos. 14-1513/1573, at 2.)

After discovery, the court granted summary judgment in favor of THI and ordered Lim to pay certain fees, costs, and sanctions (the Michigan judgment).  (*See Lim v. Terumo Corp.*, No. 11-cv-12983, at 18–20 (E.D. Mich. Apr. 9, 2014) (reproduced at Dkt. No. 3-1, at 16).)  Specifically, the court ordered Lim to pay $3,531.90: $1,750 as a sanction for failing to attend a court-ordered psychological exam and $1,781.90 for contempt based on Lim's failure to pay a previous award of attorney's fees and costs.  *Id.*  On appeal, the Sixth Circuit affirmed the court's grant of summary judgment and award of sanctions, although Judge McKeague, concurring in part and dissenting in part, argued that the district court's award should have included additional costs and fees.  (*See generally Lim*, Nos. 14-1513/1573, *supra*.)  The Sixth Circuit declined to award THI costs associated with the appeal, though the court admitted it was "tempted."  (*Lim*, Nos. 14-1513/1573 (order denying costs) (reproduced at Dkt. No. 3-1, at 56).)

**B.  Lim's Employment Proceedings**

At some point after his termination and during the course of the Michigan litigation, Lim moved to Floyd County, Virginia, and filed for unemployment.  (Compl. ¶¶ 11, 17.)  Lim asserts that Tisack made false statements to the Virginia Employment Commission (VEC) to the effect that Lim had been terminated because he was insubordinate and unfit for his position.  (*Id.* ¶¶ 17, 127–28.)  The VEC found that Lim had been terminated for misconduct, but the decision was reversed on Lim's Petition for Judicial Review to the Circuit Court for Montgomery County.  (*See Chang-Su Lim v. Va. Emp't Comm'n*, No. CL11009120-00 (Va. Cir. Ct. June 10, 2013) (reproduced at Dkt. No. 15-5); Compl. ¶ 17.)

3

At some point, THI and Tisack participated in a related employment proceeding before the Wisconsin Labor & Industry Review Commission. The precise nature of the proceeding is unclear,[3] but in any event Lim claims that Tisack made false statements to the Wisconsin tribunal as well. (*Id.* ¶¶ 17, 124.)

**C. The Virginia Litigation**

Lim's current claims are all based on THI's attempt to collect on the Michigan judgment. Because Lim failed to post a supersedeas bond, THI decided to collect on its award of sanctions and costs while Lim's appeal to the Sixth Circuit was still pending. THI obtained counsel in Virginia, domesticated the Eastern District of Michigan's judgment, which included the award of sanctions discussed *supra* and a taxed bill of costs in the amount of $2,122.70, and conducted debtor interrogatories. (Notice of Filing of Foreign Judgment, Dkt. No. 3-1, at 60; Taxed Bill of Costs, Dkt. No. 3-1, at 58; Order of Lynchburg City Circuit Court, Dkt. No. 3-1, at 66; Compl. ¶ 25.) Lim asserts that this judgment was invalid, improperly domesticated, and uncertified (Compl. ¶¶ 25, 35–36), and that THI's requests for depositions and interrogatories were unnecessary and made to harass him. (*Id.* ¶ 36.)

Lim's answers to the debtor interrogatories revealed that he owned a domain name and website: "regulatorydoctor.com." (Order of Lynchburg City Circuit Court, Feb. 3, 2015.) In May 2015, the Lynchburg City Circuit Court ordered that the website be sold to satisfy the judgment. (Order of Lynchburg City Circuit Court, May 21, 2015.) Lim alleges that Tisack and THI threatened him through their Virginia counsel, indicating that they would "wreck [his] business" by seizing his web domain if he did not abandon his appeal to the Sixth Circuit. (Compl. ¶¶ 25–26.)

---

[3] Lim claims the proceeding was based on THI's "baseless petition for review." (Compl. ¶ 18.) However, it apparently occurred before the Montgomery County Circuit reversed the VEC's ruling. (Compl. ¶¶ 17, 18.)

4

**D. Lim's Present Litigation**

Lim commenced this action in January 2016 against various persons and entities associated with THI. In addition to THI and Tisack, Lim's complaint names THI's parent company Terumo Cardiovascular Systems (TCVS) and Mark Sutter, TCVS's President and CEO. (*Id.* ¶¶ (10), (14); Sutter Decl. ¶ 2, Dkt. No. 20-2.) Lim claims that TCVS was his "primary employer for providing relocation, salary, administrative and financial control including governing Human Resources at the relevant times," while "THI was [his] secondary employer, providing office space and HR support." (*Id.* ¶ (9).) In addition, Lim sued Terumo Americas Holding, Inc. (TAHI) and TAHI employee Juichi Takeuchi (*Id.* ¶¶ (11), (15)), both of whom were dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m). (Order, Dkt. No. 39.) Finally, Lim sued Aaron Graves and Bodman, PLC, the attorney and law firm that represented the THI defendants in the Michigan litigation.[4] (Compl. ¶¶ (16), (17).)

Lim's complaint brings ten claims against the defendants remaining in this case. Count One asserts a Title VII retaliation claim based on allegations that defendants aggressively litigated the Michigan suit and tried to collect on their sanctions award in order to retaliate against him. Counts Two through Seven, all titled as species of "negligence," "fraud," "invasion of privacy," or "conspiracy," assert state law claims based on THI's attempts to collect on its judgment against Lim. The gravamen of these claims is that THI manipulated the court to enforce an improper judgment. Finally, Count Eight asserts a stand-alone vicarious liability claim, Count Nine asserts defamation based on defendants' misrepresentations in the various employment and domestication proceedings, and Count Ten claims misappropriation and theft of trade secrets arising from the circuit court's order requiring Lim to transfer his domain name.

---

[4] A second group of defendants composed of persons and entities that had some connection to Lim's home in Michigan was dismissed for misjoinder. (Order, Dkt. No. 38.)

5

Defendants responded to Lim's initial complaint by first filing a motion for sanctions and then filing a motion to dismiss. (Dkt. Nos. 3, 19.) Lim amended his complaint, and defendants once again moved to dismiss. (Dkt. No. 25.) The court's May 27, 2016 Roseboro notice gave Lim twenty-one days from the date of the notice to respond to defendants' motion to dismiss (Dkt. No. 27), but Lim did not respond until June 27, 2016, thirty days later. Defendants subsequently filed an additional motion to dismiss Lim's claims for failure to prosecute, based on his noncompliance with the Roseboro notice. (Dkt. No. 32.)

On October 11, 2016, the court dismissed Juichi Takeuchi and Terumo Americas Holding, Inc. because they had not been served pursuant to Rule 4(m). (Order, Dkt. No. 39.) On October 31, 2016, Lim filed a motion for reconsideration of that dismissal, arguing that the dismissed parties had been served with a request to waive service. (Dkt. No. 40.) Lim subsequently moved for a default judgment against the dismissed parties. (Dkt. No. 41.)

## II. DISCUSSION

### A. Personal Jurisdiction

All defendants move to dismiss Lim's complaint for lack of personal jurisdiction under Rule 12(b)(2). However, because the court finds that defendants waived that defense by moving for sanctions before objecting to personal jurisdiction, the court will deny their motion to dismiss Lim's complaint on that basis.

It is well-established that the "requirements of personal jurisdiction represent[] first of all an individual right" which can be waived by express or implied consent to the court's jurisdiction. *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982). Under Rule 12(h), a defendant waives an objection to personal jurisdiction by failing to make it by motion or raise it in a responsive pleading. Fed. R. Civ. P. 12(h)(1); *Freedom Hawk Kayak,*

6

*LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 767 (W.D. Va. 2012) (noting that a challenge to personal jurisdiction must be raised "at the time the first significant defensive move is made") (quoting *Rates Tech, Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005)). A party may also waive an objection to personal jurisdiction by impliedly consenting to the court's jurisdiction. *See Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) ("Rule 12(h), however, 'sets only the outer limits of waiver; it does not preclude waiver by implication.'") (quoting *Marquest Med. Prods. v. EMDE Corp.*, 496 F. Supp. 1242, 1245 n.1 (D. Colo. 1980)); *Xyrous Commc'ns. LLC v. Bulgarian Telecomms. Co. AD*, No. 1:09-cv-396, 2009 U.S. Dist. LEXIS 80620, at *25 (E.D. Va. Sept. 4, 2009) ("Importantly, a party can waive a Rule 12 defense before an answer or Rule 12 motion is ever filed."); *see also Ins. Corp. of Ir.*, 456 U.S. at 704–05 ("The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.").

In determining whether a motion filed before a Rule 12 motion constitutes a waiver of Rule 12 defenses, courts generally look to the nature of the motion. Although many preliminary actions, like a request for an extension of time, "do not come close to what is required for waiver or forfeiture," *Freedom Hawk Kayak*, 908 F. Supp. 2d at 767 (quoting *Mobile Anesthesiologist Chi., LLC v. Anesthesiology Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)), a motion that seeks "affirmative relief from the court" may waive a Rule 12 defense. *Xyrous Commc'ns*, No. 1:09-cv-396, 2009 U.S. Dist. LEXIS 80620, at *26 (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999)); *see Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 101 (2d Cir. 2016); *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 290 (E.D. Pa. 2009). "Affirmative relief is implicated when the court 'considers the merits or quasi-merits of a controversy.'"

7

*Xyrous Commc'ns*, No. 1:09-cv-396, 2009 U.S. Dist. LEXIS 80620, at *26 (quoting *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967)). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Freedom Hawk Kayak*, 908 F. Supp. 2d at 767–68 (quoting *Mobile Anesthesiologist Chi.*, 623 F.3d at 443); *accord King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).

In this case, defendants filed a motion for sanctions and supporting brief over a month before filing their first motion to dismiss—the first motion suggesting that the court lacks personal jurisdiction. (*See* Dkt. No. 20.) Defendants' motion for sanctions asks the court to award them attorney's fees associated with the case and a prefiling injunction against future suits from Lim. (Def.s' Mot. Sanctions 9.) That motion also asserts that Lim's claims are barred by the *Rooker-Feldman* doctrine and by issue and claim preclusion, and "request[s] that the Complaint be dismissed with prejudice." (*Id.* at 8.) By raising these issues and affirmatively requesting that the court dismiss Lim's claim and grant defendants sanctions, defendants ask the court to consider the merits of Lim's claim and find it frivolous. *See Sperber v. Elwell*, No. 13-cv-768, 2013 U.S. Dist. LEXIS 116164, at *4 (D.N.J. Aug. 12, 2013) (characterizing a motion for sanctions as an affirmative motion for relief); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 659 (S.D.N.Y. 1997). Accordingly, the court finds that defendants consented to the court's jurisdiction and waived their defense under Rule 12(b)(2).

## B. Defendants' 12(b)(6) motion

Defendants also argue that, even if the court has personal jurisdiction over them, Lim has failed to state plausible claims and his complaint must be dismissed pursuant to Rule 12(b)(6).

8

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Unadorned allegations of wrongdoing, "formulaic recitation[s]" of the elements of a claim, and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state viable claims. *Id.* (quoting *Twombly*, 550 U.S. at 555–57).

### 1. Lim has not plausibly alleged Title VII retaliation.

Count I of Lim's complaint asserts Title VII retaliation based on defendants' litigation activities, including filing frivolous motions, informing Lim that they would not pursue additional sanctions if Lim dropped his appeal and waived his claims, and "annoying" him by sending and then recalling an email. (Compl. ¶¶ 68–76.) Title VII prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013) (citing 42 U.S.C. § 2000e-3(a)). "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)).

Even if defendants' actions were sufficiently adverse to give rise to a retaliation claim, Lim's claim fails because he has not plausibly alleged that those actions were retaliatory. At

9

heart, Lim's theory is that defendants litigated his previous Title VII claim in a manner that was irritating to him, and tried to collect on the judgment awarded in their favor, in order to retaliate against him for filing that suit. The court will not infer that defendants acted with retaliatory animus from the fact that they resisted Lim's claims, particularly where he alleges no facts to support the theory. Lim's claim of retaliation is not plausible in light of the "obvious alternative explanation," *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567), that defendants were simply trying to secure a favorable outcome in that case. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (finding that evicted plaintiff's retaliation claim could not survive a 12(b)(6) motion where defendants offered the obvious alternative explanation that they were regaining possession of the property pursuant to an eviction order). Accordingly, Lim's Title VII claim must be dismissed.

### 2. Res judicata bars Lim's claims that challenge the Lynchburg Circuit Court's rulings.

Six of Lim's ten claims rely, at least in part, on allegations that the defendants improperly convinced the Circuit Court for the City of Lynchburg to take improper actions. Specifically, Counts Two, Three, and Four assert that defendants defrauded[5] Lim by domesticating the Michigan judgment and by making misrepresentations about its authenticity; Counts Six and Seven assert that defendants conspired to domesticate the improper foreign judgment in order to retaliate and harass Lim and his wife and to damage Lim's business; and Count Ten asserts that defendants influenced the court to order Lim's domain name and intellectual property sold, thereby depriving him of trade secrets. These claims turn on two issues: first, whether the Michigan judgment was properly authenticated; and second, whether the website and domain

---

[5] Count Two claims negligence based on defendants' breach of a duty "not to commit fraud" against Lim. (Compl. ¶ 78.) It appears that the claim is based in part of allegations that defendants misled the circuit court.

name "regulatorydoctor.com" could be sold to satisfy defendants' judgment. Because the circuit court has already ruled on these issues, they are barred by res judicata.

"Res judicata involves both issue and claim preclusion." *Funny Guy, LLC v. Lecego, LLC*, No. 160242, 2017 Va. LEXIS 7, at *5 (Va. 2017); *Lee v. Spoden*, 776 S.E.2d 798, 803 (Va. 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Lee*, 776 S.E.2d at 803 (quotations omitted). In Virginia, four elements must be satisfied before a party can invoke issue preclusion:

> (1) The parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Ibrahim Martin-Bangura v. Comonwealth Dep't of Mental Health*, 640 F. Supp. 2d 729, 736 (E.D. Va. 2009) (quoting *Whitley v. Commonwealth*, 538 S.E.2d 296, 299 (Va. 2000)); *see accord Funny Guy*, No. 160242, 2017 Va. LEXIS 7, at *5–6. The party seeking preclusion bears the burden of demonstrating that these elements are satisfied. *Wright v. Eckhardt*, 591 S.E.2d 668, 670 (Va. 2004).

The court finds that these elements are satisfied as to each of the issues discussed above. First, THI and Lim were both parties to the state court domestication proceedings. (*See* Notice of Filing Foreign Judgment, Ex. 9.) Although Lim names various other defendants here who were not parties to that action, issue preclusion applies to privies as well. *See Bates v. Devers*, 202 S.E.2d 917, 921 (Va. 1974) (noting that collateral estoppel applies to parties "and their

privies" in subsequent actions). Under Virginia law, "The touchstone of privity for purposes of *res judicata* is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." *See State Water Control Bd. v. Smithfield Foods*, 542 S.E.2d 766, 769 (Va. 2001). Although only THI sought to collect on the Michigan judgment, the judgment also awarded sanctions to Tisack and TCVS, who were also defendants in the Michigan suit and thus shared THI's interest in filing the judgment in Virginia. The interests of the other defendants in this case—TCVS's president and the lawyers representing the defendants who were awarded sanctions—are also identical. Accordingly, the first factor is satisfied.

Second, both of the factual issues Lim raises were actually litigated by the circuit court. As the court's orders indicate, the court heard and rejected Lim's various challenges to the domestication of the judgment and sale of the domain name. (*See, e.g.*, Order of Lynchburg City Circuit Court, Jan. 30, 2015 (dismissing Lim's motion to set aside the judgment); Order of Lynchburg City Circuit Court May 21, 2015 (ordering Lim's domain name transferred).) As the Supreme Court of Virginia recently stated, "[t]he law should afford one full, fair hearing relating to a particular problem—but not two." *Funny Guy*, No. 160242, 2017 Va. LEXIS 7, at *6 (quoting Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes § 11.01, at 246 (2006)). Thus the second prong of this test is satisfied.

Third, the issues Lim raises were essential to the judgment rendered in the circuit court proceeding. THI domesticated its judgment pursuant to Virginia's Uniform Enforcement of Foreign Judgments Act, Va. Code § 8.01-465.1, *et seq.*, which authorizes the clerk of any circuit court to treat "any foreign judgment authenticated in accordance with the act of Congress or the statutes of the Commonwealth" in the same manner as a judgment of a circuit court of the Commonwealth. Va. Code § 8.01-465.2; (*see* Compl. ¶ 25; Notice of Filing of Foreign

12

Judgment, Ex. 9.)  Accordingly, whether the judgment was properly authenticated—the issue Lim now raises—was central to the court's decision to accept it.  And although the exact nature of Lim's objection to the transfer of his domain name is not entirely clear, whether the domain name could be sold to satisfy the judgment against him was of course essential to the court's decision to order it.  So the third factor is satisfied as well.

Finally, the circuit court's decision resulted in a valid, final judgment against Lim.  The orders domesticating the judgment and ordering the transfer of Lim's domain name are before the court, and a judgment entered pursuant to the Uniform Enforcement of Foreign Judgments Act "has the same effect and is subject to the same procedures . . . as a judgment of a circuit court . . . and may be enforced in a like manner."  Va. Code § 8.01-465.2.  Accordingly, Lim is barred from relitigating the issues at the center of these claims, and for that reason they must fail.

### 3. Lim's negligence claim fails.

Count Two of Lim's complaint asserts that defendants were negligent in their attempts to domesticate the Michigan judgment and in making misrepresentations in Lim's Virginia and Wisconsin unemployment proceedings.  The court construes Lim's negligent misrepresentation claim as a claim of constructive fraud.  *See Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 573 n.4 (Va. 2003) ("Negligent misrepresentation is the essence of a claim for constructive fraud.") "Constructive fraud requires a showing by clear and convincing evidence that a false representation of material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation."  *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 654–55 (W.D. Va. 2011).  Fraud claims must satisfy the elevated pleading standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b); *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 682

13

(E.D. Va. 2014). Pleading a fraud claim with particularity requires a plaintiff, among other things, to plead the contents of the false representations. *McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 559 (4th Cir. 2013). Lim has not pleaded the contents of the allegedly false representations on which his claim is based, so his claim must fail.

In addition to the alleged misrepresentations, Lim claims that defendants sent him what he characterizes as a "threatening" email, stating that defendants had left a voice mail message to Lim requesting that he contact them to arrange payment of the sanctions award. (Compl. ¶ 79.) It is unclear to the court how this email could be construed as a threat, or how such an email could constitute a breach of any duty defendants owed Lim under Virginia law. Accordingly, the court will dismiss Lim's negligence claim.

### 4. Lim cannot state a claim for invasion of privacy.

In Count Five of his complaint, Lim attempts to assert an invasion of privacy claim, based on a vague allegation that defendants "unlawfully disclosed or used Plaintiff's private and confidential information/records, electronically communicated, to the public against the Plaintiff." As the Supreme Court has indicated, the only actionable tort for invasion of privacy in Virginia is an action for "misappropriation of plaintiff's name or likeness for commercial purposes." *Wjla-Tv v. Levin*, 564 S.E.2d 383, 395 n.5 (Va. 2002); *see Falwell v. Penthouse*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981). Lim does not allege that defendants misappropriated his name or likeness and, therefore, fails to state a claim for invasion of privacy under Virginia law.[6]

### 5. Vicarious liability is not an independent cause of action.

Count Eight of Lim's complaint asserts a claim titled "Vicarious Liability" against all defendants. That claim states that the various defendants are employers and supervisors of

---

[6] Lim cites Va. Code § 19.2-69, which provides a civil remedy for victims of violations of the Virginia Interception of Wire or Oral Communications Act, Va. Code § 19.2-61 *et seq.* This provision is irrelevant to Lim's factual allegations.

14

Tisack and are therefore vicariously liable for the "retaliatory action" that she took against Lim on their behalf. (Compl. ¶ 120.) "Vicarious liability 'is a theory of liability, not a separate cause of action,'" *Sewraz v. Nguyen*, No. 3:08-cv-90, 2011 U.S. Dist. LEXIS 5464, at *27 (E.D. Va. Jan. 20, 2011) (quoting *Rohrbaugh v. Kreidler*, 71 Va. Cir. 298, 304 (Va. Cir. 2006)); *Newport News Indus. v. Dynamic Testing*, 130 F. Supp. 2d 745, 751 (E.D. Va. 2001); *Shaver v. HPB Corp.*, 84 Va. Cir. 382, 384 (Va. Cir. 2012), so the court will dismiss Count Eight to the extent it attempts to assert a stand-alone vicarious liability claim. The court assumes from this count that Lim means to assert vicarious liability as a theory of liability for his other claims. However, since all of Lim's underlying claims fail for the reasons stated herein, there is no vicarious liability here.

### 6. Absolute privilege bars Lim's defamation claim

Count Nine attempts to assert a defamation claim against all defendants. The claim is based entirely on allegedly false statements defendants made to the Circuit Court for the City of Lynchburg in the process of collecting on the Michigan judgment, and to Virginia and Wisconsin tribunals during Lim's unemployment proceedings. It is well-settled in Virginia that communications in a judicial proceeding that are relevant to the issues of the proceeding are absolutely privileged and cannot be the basis for a defamation claim. *Mansfield v. Barnabei*, 727 S.E.2d 69, 73 (Va. 2012); *Donohoe Constr. Co. v. Vernon Assocs.*, 369 S.E.2d 857, 860 (Va. 1988). This absolute privilege extends to "all proceedings of a judicial nature." *Mansfield*, 727 S.E.2d at 73 (quoting *Penick v. Ratcliffe*, 140 S.E. 664, 667 (Va. 1927)). Because all of defendants' allegedly defamatory statements were made in judicial or quasi-judicial proceedings, none can be the basis for a defamation claim.[7] For that reason, Lim's claim must be dismissed.

---

[7] Numerous courts have also interpreted Va. Code § 60.2-623(B), which provides that information furnished to the VEC "shall not be . . . used in any judicial proceeding other than one arising out of the provisions of

For the foregoing reasons, each of Lim's claims fails to state a plausible claim for relief and his claims must therefore be dismissed pursuant to Rule 12(b)(6). Because of this dismissal, the court will deny defendants' motion to dismiss for lack of prosecution as moot.

## C. Lim's motion for reconsideration and motion for default

Lim's two outstanding motions require little discussion. First, motions for reconsideration are disfavored, and Lim's presents none of the grounds that would normally justify such a motion. *See Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2015) (describing the proper grounds for a motion to reconsider); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). The court will therefore deny Lim's motion to reconsider.

Of course, Lim's motion for a default judgment against Juichi Takeuchi and Terumo Americas Holding, Inc. is entirely meritless. Those defendants were never served and were therefore dismissed from this action pursuant to Rule 4(m). Accordingly, Lim's motion is denied.

## D. Sanctions

In addition to its motion to dismiss, defendants filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants ask for two sanctions specifically: (1) their attorney's fees related to this action, and (2) a pre-filing injunction that would require Lim to attain leave of this court before filing future lawsuits. Defendants argue that these sanctions are justified by Lim's long and well-documented history of using frivolous lawsuits and litigation tactics to harass a wide variety of persons and institutions.

---

this title . . . ," to prohibit plaintiffs from using statements submitted to the VEC as the basis for defamation claims. *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 802–03 (E.D. Va. 2003); *Moore v. PYA Monarch, LLC*, 238 F. Supp. 2d 724, 730 (E.D. Va. 2002). Thus Lim's claim based on statements made to the VEC fails for that reason as well.

16

Rule 11 authorizes the court to sanction parties for presenting pleadings for "any improper purpose, such as to harass," and for presenting frivolous claims, among other things. Fed. R. Civ. P. 11(b). Although Rule 11 instructs that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. (11)(c)(4), decisions about whether to award sanctions and what sanction to award lie within the discretion of the district court. *In re Edmond*, 934 F.2d 1304, 1313 (4th Cir. 1991).

Defendants characterization of Lim's litigation history is certainly well-supported. Lim has consistently skirted—and occasionally crossed—the line of sanctionable conduct throughout his extensive litigation history. That conduct has appropriately earned Lim awards of sanctions in the past; indeed, this case arises from Lim's attempt to avoid responsibility for an award of sanctions. The court has little doubt that Lim's slash-and-burn style of litigation has caused significant inconvenience to the defendants in this case, and to many other defendants that have found themselves on the wrong side of Lim's filings.

However, the court will decline to award sanctions here. Although Lim has failed to state any viable claim here, the court cannot determine, particularly in light of Lim's *pro se* status, that all of his claims are so frivolous that sanctions are warranted. And to this point, with one notable exception,[8] Lim has not resorted to the sort of frivolous motions before this court that have warranted sanctions in previous cases. So, although it is a close question, the court will not award sanctions.

### III. CONCLUSION

---

[8] Lim's motion for a default judgment against parties the court has dismissed from this case is clearly frivolous. However, because that motion was not the basis for defendants' motion for sanctions and because defendants did not respond to that motion, the court declines to sanction Lim for it.

For the foregoing reasons, the court will grant defendants' motion to dismiss for failure to state a claim, deny defendants' motion to dismiss for failure to prosecute as moot, deny defendants' motion for sanctions, and deny Lim's motion for reconsideration and for a default judgment. An appropriate order will be entered.

Entered: March 30, 2017.

*/s/ Elizabeth K. Dillon*
        Elizabeth K. Dillon
        United States District Judge